IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

WISCONSIN STATE SENATE,
SENATOR ANDRÉ JACQUE, and
ANTHONY THEISEN,

       Plaintiffs,      Case No.  23-cv-01175-WCG

v.

THE CITY OF GREEN BAY and
ERIC GENRICH,

       Defendants.

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION[1]

Plaintiffs began this case seeking emergency relief to end the use of audio surveillance technology at City Hall that had been installed to combat a spat of verbal assaults. That technology was deactivated on March 2, 2023 and Plaintiffs have since dropped one individual Plaintiff in addition to their class allegations. Setting aside the Wisconsin State Senate's lack of standing for the moment (which Plaintiffs appear to concede), all that remains of this case are the individual allegations of Senator Jacque and Plaintiff Theisen.

According to the Amended Complaint, Senator Jacque "believes that at least one of his private conversations at City Hall over the past few years *may* have been recorded." (ECF 1-2 at 6, ¶7; emphasis added.) For his part, former Alder Theisen alleged he had "at least one sensitive, private conversation regarding the city budget in the hallway, which was, unbeknownst to him,

---

[1] Allegations and facts discussed herein are accepted from the Amended Complaint solely for the purposes of this motion to be consistent with the Court's review of the pleadings and are not otherwise admitted in any way by Defendants.

being secretly recorded." (*Id.* ¶8.) Without further elaboration and factual allegations, Senator Jacque's and Plaintiff Theisen's vague, alleged conversations fail to state claims.

As a factual matter, the threshold question underpinning each of Senator Jacque's and Plaintiff Theisen's claims is whether their single, respective conversations ***were, in fact, recorded***. Plaintiffs fail to identify the necessary facts about these alleged conversations (when they occurred, where they took place, with whom they were had, etc.) to equip the Court to determine whether the alleged conversations plausibly took place when and where the audio surveillance technology could have recorded them.

Even if this Court determines that the allegations that Senator Jacque's and Plaintiff Theisen's single, respective conversations *could have* been recorded are sufficient, Plaintiffs have not pled sufficient facts to plausibly find they had a reasonable expectation of privacy in the public hallways of City Hall.

In light of the foregoing, the Amended Complaint should be dismissed in its entirety before any further government resources are drained into an otherwise resolved matter. If not, Counts I and VI are entirely moot, fail to present justiciable controversies, and should be dismissed. Even if this Court permits Plaintiffs' claims to stand, it should dismiss Plaintiff Wisconsin State Senate for lack of standing. Finally, Mayor Genrich did not violate a clearly established law and is entitled to qualified immunity as to Count IV.

## I. Senator Jacque's and former Alder Theisen's claims fail because they do not plausibly establish that their alleged conversations were recorded, let alone that they had reasonable expectations of privacy in the public hallways of City Hall.

The Parties agree that each of Plaintiffs' claims fails without a reasonable expectation of privacy. (Resp. 16.)[2] However, Plaintiffs fail to identify the necessary facts surrounding Senator

---

[2] Citations to "Resp." are to Plaintiffs' Memorandum in Opposition to the City of Green Bay and Eric Genrich's Motion to Dismiss [ECF 18].

2

Jacque's and Plaintiff Thiesen's alleged private conversations to confirm whether it is plausible they were even recorded in the first instance. In lieu of specified allegations, Plaintiffs urge this Court to find a reasonable expectation of privacy based upon allegations that the hallways of City Hall are "large enough to enable two or more people to conduct a conversation without third parties being able to overhear the conversations" and "see approaching third parties . . . if there is a risk of being overheard." (*Id*. at 20; internal citations and quotations omitted.)

Plaintiffs attempt to bolster this position by plugging the word "public" into the holdings of numerous, inapposite cases. But even assuming, *arguendo*, that Plaintiffs' conversations were recorded, Plaintiffs' claims fail because the facts alleged are insufficient to support that, absent more, they had a reasonable expectation of privacy.

### A. Senator Jacque's and former Alder Theisen's vague conjecture regarding their single, respective conversations are insufficiently pled to survive.

In response to Defendants' argument that the pleadings fail to allege threshold facts – namely, the dates, times, and exact locations of Plaintiffs' alleged conversations (in view of the fact that audio surveillance only occurred in three specific locations during a limited period of time) – Plaintiffs counter *in a footnote* that "[d]iscovery will reveal the exact dates and content of Plaintiffs' recorded conversations." (Resp. 18, n.6.) But the allegations in Plaintiffs' Amended Complaint are so threadbare and deficient as to warrant dismissal *now*.

Entirely absent from Plaintiffs' pleadings is the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Senator Jacque "believes that at least one of his private conversations at City Hall over the past few years *may* have been recorded" (ECF 1-2 at 6, ¶7; emphasis added.) Plaintiffs do not identify when, where, or with whom the supposed conversation "[h]e believes" was recorded occurred, such that a court could infer the necessary facts. (*Id*.) By

way of comparison, the Amended Complaint notes that audio surveillance was placed in the hallway ceiling outside the entrances to the Clerk's office, the Mayor's office, and the Common Council chamber, but fails to connect the alleged conversation to these spaces. (*Id*. at 9, ¶¶21-23.)

Lacking any knowledge of any actual, protected conversation, Plaintiffs summarily conclude that the Senator's privacy expectation was reasonable *and* violated with a recording being made. (*Id.* at 19, 20, 23, 25, ¶¶70, 75, 90, 99, 108.) Senator Jacque coining *one* potential conversation in the hallways of City Hall as "private" is not enough to plead a claim.

Similarly, Plaintiff Thiesen alleges he had "at least one sensitive, private conversation regarding the city budget in the hallway." (*Id.* at 6, ¶8.) Like Senator Jacque's, Plaintiff Thiesen's allegations are devoid of any factual assertions from which a court could find a reasonable expectation of privacy. Plaintiff Thiesen merely relies on his own ultimate conclusion: that his hypothetical conversations were "private" and that his expectation of privacy was inevitably "reasonable." (*Id.* at 19, 20, 23, 25, ¶¶70, 75, 90, 99, 108.)

This is no surprise. Plaintiffs have been clear that recordings *may not even exist*, noting Jacque's allegations and having already argued to the circuit court that they "need access to all audio recordings to prove their case, *including to prove the basic fact that audio recording occurred*." (ECF 1-4 at 359-360; emphasis added.) Senator Jacque has attested, "I have visited City Hall on at least one occasion over the past three years. I recall that I have had at least one private conversation in City Hall that, unbeknownst to me at the time, was quite possibly audio surveilled and recorded by the City." (*Id*. at 21-23; *see* ECF 1-2 at 8, ¶16, noting recording devices installed between winter of 2021 and summer 2022.) Plaintiff Thiesen informed the circuit court that he "needs access to recordings to help refresh his memory" because he "cannot recall exactly

4

what he said in the hallway during his private conversations." (ECF 1-4, 359-60.)[3] It is not enough to plead facts that are "merely consistent with a defendant's liability," or to allege "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

Additionally, the audio surveillance was installed at three specific locations: outside the doors of the Clerk's office, the Mayor's Office and the Common Council chambers. (ECF 1-2 at 9, ¶¶21-23.) Meanwhile, Plaintiffs emphasize the expansiveness of the hallways, which are "large enough to enable two or more people to conduct a conversation ***without third parties being able to overhear the conversation***," (ECF 1-2 at 11, ¶35; emphasis added), and which purportedly accommodated Senator Jacque's and Plaintiff Theisen's respective conversations "conducted at low volume, in a place away from others." (*Id*. at 18, ¶75.) Taking these allegations as true, Plaintiffs fail to connect the dots as to how Plaintiffs' conversations were in fact recorded. After all, Plaintiffs do not allege – nor could they (plausibly) – that every single word uttered in the public hallways throughout City Hall was picked up and recorded. Plaintiffs not only fail to mention where in relation to the audio surveillance the alleged conversations occurred but also the absence of background noise such as competing conversations for example. Because the existence of a recording underpins all their claims, and Plaintiffs have failed to plausibly plead that their

---

[3] Notably, it appears likely that Plaintiffs may never be able to fill in these gaps. As was told to the circuit court and Plaintiffs, Defendants only have audio recording dating back to November 15, 2022 on account of the municipality's standard retention practices. (ECF 1-4 at 274, 357.) But Plaintiffs' representations to the circuit court reveal that any alleged "private" conversations involving the individual Plaintiffs took place *prior to* November 15, 2022. Plaintiffs represented to the circuit court that Plaintiff Theisen recalls entering City Hall September 20, 2022 and November 10, 2022. (*Id*. at 359-360; 19, ¶11.) And per documents referenced in Plaintiff's Amended Complaint (ECF 1-2 at 8-9, ¶32, n.12), Senator Jacque knew of the audio surveillance no later than October 2022. *See* Ben Krumholz, *Fox 11 Obtains Green Bay City Hall Surveillance Recording*, Fox 11 News (February 19, 2023) (containing the Wisconsin Legislative Council Memorandum demonstrating Senator Jacque requested analysis of the legality of audio surveillance as far back as October 2022).

alleged conversations (allegedly imperceptible to any third parties) could have been recorded, their pleadings are deficient. The analysis should end here, and this case should be dismissed.

**B. The cases Plaintiffs rely on to support their contention that they had a reasonable expectation of privacy in the hallways of City Hall are inapposite and do not support a plausible claim for relief in the absence of specified pleadings.**

In lieu of specified allegations regarding the conversations the named Plaintiffs allegedly had, Plaintiffs argue for what would amount to a *de facto* rule that anyone who walks through the public corridors of City Hall has a reasonable expectation of privacy in their conversations. Plaintiffs allege that the hallways in City Hall are "large enough to enable two or more people to conduct a conversation without third parties being able to overhear the conversations," and "see approaching third parties[.]" (Resp. 20; internal citations and quotations omitted.) As Plaintiffs would have it, they "satisfied their burden to allege facts showing that they possessed an objectively reasonable expectation of privacy in their private conversations in the hallways of City Hall," (*id*.), by merely describing what is, quite simply, a public hallway. Indeed, a hallway that is virtually indistinguishable from any other hallway in any other public building. Describing a hallway is plainly insufficient for a reviewing court to find that Plaintiffs had an objectively reasonable expectation of privacy and that they are plausibly entitled to relief. *See Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Iqbal*, 556 U.S. 662. Plaintiffs attempt to cure this deficiency by citing a string of inapposite cases.

*First*, Plaintiffs cite to *United States v. Llufrio,* 237 F.Supp.3d 735 (N.D. Ill. 2017), claiming it recognizes an "objectively reasonable expectation of privacy in a public interrogation room." (Resp. 21.) The characterization of a "interrogation room" as "public" boggles the mind. Indeed, the court in *Llufrio* found that the defendant had a reasonable expectation of privacy while

mumbling statements **alone in a closed, locked interrogation room**. *Llufrio,* 237 F.Supp.3d at 745-46.

*Second*, Plaintiffs cite *Gennusa v. Canova,* 748 F.3d 1103 (11th Circuit) *passim* for the proposition that "courts have consistently concluded that society recognizes as reasonable an expectation of privacy for confidential conversations that occur in public places." (Resp. 19; internal quotations omitted.) This is a gross misstatement of *Gennusa's* holding. As was the case in *Llufrio,* the Eleventh Circuit in *Gennusa* found a reasonable expectation of privacy in a **police interview room**. 748 F.3d at 1108. Moreover, the conversation at issue in *Gennusa* was plainly privileged, yet police knowingly listened into a conversation between an attorney and her client. *Id*. Both *Llufrio* and *Gennusa* are plainly distinguishable as Plaintiffs have alleged nothing akin to locked doors, closed rooms, or obvious conversations with counsel.

*Third*, Plaintiffs rely on *Katz v. United States,* 389 U.S. 347 (1967. In *Katz*, the Supreme Court found that the defendant had a reasonable expectation of privacy in a phone booth because "[o]ne who occupies [a phone booth], **shuts the door behind him**, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters ... will not be broadcast to the world." *Id.* at 511-12 (emphasis added). *Katz* is inapposite. Plaintiffs have not "paid the toll" to expect privacy in the public hallway of City Hall, much less sought sanctuary in a private space.[4]

*Finally,* Plaintiffs rely heavily on *Narducci v. Moore,* 572 F.3d 313 (7th Cir. 2009) as instructive. But in *Narducci*, the Seventh Circuit analyzed whether an employee had a reasonable

---

[4] Plaintiffs cite in passing a couple of cases inapposite because they involve offices capable of exclusion of others. *See United States v. Hagarty*, 388 F.2d at 717 (case involving "eavesdropping device" installed on baseboard of the wall of a government office); *United States v. McIntyre*, 582 F.2d 1221 (9th Cir 1978) (Title III federal wiretapping case involving the individual office of suspected law enforcement officer). Plaintiffs also cite to *United States v. Webster*, 775 F.3d 897 (7th Cir 2015) to argue about analysis of "layout" but fail to note that *Webster* resulted in the Seventh Circuit finding that the defendant did not have a reasonable expectation of privacy in a police patrol car – a case not analogous here. (Resp. 12-14.)

Case 1:23-cv-01175-WCG   Filed 11/13/23   Page 7 of 21   Document 23-1

expectation of privacy **on an office phone line** that was being recorded. 572 F.3d at 316-17. The

Seventh Circuit reiterated:

> The touchstone of Fourth Amendment inquiry is reasonableness, a standard measured in light of the totality of the circumstances and determined by balancing the degree to which a challenged action intrudes on an individual's privacy and the degree to which the action promotes a legitimate government interest.

*Narducci*, 572 F.3d at 319 (citing *Green v. Butler*, 420 F.3d 689, 694 (7th Cir. 2005)).

On the topic of balancing the competing privacy and governmental interests, Plaintiffs

recognize that the audio surveillance technology outside the entrances to the Clerk's office, the

Mayor's office, and the Common Council chamber, (ECF 1-2 at 9, ¶¶21-23), was part of "building

security," and that the Mayor 'maintains that . . . 'security' interests justified and even necessitated

the use of Hallway Bugs." (*Id.* at 14, 16, ¶¶52, 58.) The Amended Complaint even provides a link

to a City of Green Bay fact sheet explaining that the audio surveillance technology was installed

"following complaints from City staff and members of the public,"[5] (*Id.* at 13, ¶43, n.13.) Finally,

the Amended Complaint makes contradictory remarks that the audio surveillance was "secretly"

installed while also acknowledging that City officials "did notify certain unidentified 'staff'" of

the audio surveillance.[6] (*Id.* at 4, 9, ¶¶2, 20.)

Unfortunately, events ranging from verbal assaults to mass shootings plague public

settings, and the need for public safety measures at places such as government buildings is

"particularly acute." *See City of Indianapolis v. Edmond*, 531 U.S. 32, 48 (2000). Accordingly,

---

[5] The Court may consider "documents attached to a motion to dismiss … if they are referred to in the plaintiff's complaint and are central to his claim" without converting the motion to one for summary judgment. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012), citing *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994); *see also Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012). The complaints referenced in the fact sheet include verbal assaults against citizens returning absentee ballots, the City Attorney, members of the press, and the City Clerk. (*See* ECF 1-4, 160-61 ¶¶3-5.)

[6] As already noted in the record before the Amended Complaint was filed, the entire City staff of over 800 employees was notified. (ECF 1-4 at 162, ¶8 and 166, Ex. D.)

8

society has come to expect as "routine" searches "at entrances to courts and other official buildings[.]" *Chandler v. Miller*, 520 U.S. 305, 323 (1997).

Plaintiffs criticize Defendants' security rationale as "flimsy" when weighed against "the public's liberty interest," and cite *Narducci*. (Resp. 15; citing 572 F.3d at 316.) However, Plaintiffs reliance on *Narducci* is misplaced for at least two reasons. First, *Narducci* involves actual, known recordings of specific, office phone lines. 572 F.3d at 316. An undisclosed phone recording operation within a workplace over the course of six years is a far cry from audio surveillance infrastructure maintained in the publicly frequented corridors of a public building. *See id*. at 321.

Second, the court in *Narducci* raised no qualms with the genesis of the phone recordings based on the defendants' worry over "irate residents threatening employees." *Narducci, 572 F.3d* at 316. In *Narducci*, potential verbal abuse and threats pertaining to public decision-making underpinned the security concerns that led to the audio surveillance. Ultimately, the Seventh Circuit denied summary judgment to defendants because the "recording of every phone call, for at least a six-year period" fell "particularly hard on finance department employees who used those lines every day." *Narducci*, 572 F.3d at 321. The Seventh Circuit noted Narducci's "hundreds and hundreds" of recorded phone calls and went on to "***emphasize*** that [its] ruling [was] centered on the frequency with which Narducci used the affected phone lines, the volume of calls that he made, as well as the lack of notice." *Id*. at 321 n.3 (emphasis added). The Seventh Circuit went on to explain "we are skeptical that Narducci's claims are typical of the claims of the entire class (which ***theoretically embraces people who made a single phone call***) and suggest that in light of the limited nature of our ruling the district court may need to revisit the issue of class action certification." *Id*. (emphasis added). As in *Narducci*, this Court should be "skeptical" of whether a single recording, unspecified as these are, is sufficient to state a claim. *Id*.

9

Perhaps recognizing the scarcity of doctrine that marshals in their favor, Plaintiffs turn the "reasonable expectation of privacy" analysis on its head in arguing in their response for what amounts to a request that this Court afford *enhanced* privacy protections to the transitory public spaces in government buildings. Plaintiffs rely on the "distinct nature" of City Hall as "the heart of government" to justify their claims. (Resp. 21.) Again, however, their arguments are out of context.

Plaintiffs acknowledge that City Hall is, by its nature, "open to the public." (ECF 1-2 at 7.) Moreover, the audio surveillance capabilities at issue were only utilized in *hallways*—i.e. the public, transitory spaces of City Hall which, unlike rooms or units within a building, cannot be enjoyed to the exclusion of others. (*Id.* at 8-10.) It is true that "the Fourth Amendment protects people, not places." *Katz*, 389 U.S. at 351-53. However, as Justice Kennedy noted in his dissent in *Carpenter v. United States*, "property concepts are, nonetheless, fundamental in determining the presence or absence of [a] privacy interest, individuals often have greater expectations of privacy in things and places that belong to them, not to others." 138 S. Ct. 2206, 2208 (2018) (Kennedy, J. dissenting) (citing *Rakas v. Illinois,* 439 U.S. 128, 143 (1978)) (internal citations and quotations omitted). City Hall's "distinct nature" as "the heart of government" is precisely why it imbues no expectation of privacy.

Worse yet for their argument, Plaintiffs fail to meaningfully address and distinguish Defendants' authority, which consistently supports that common spaces like hallways are not private. (*See* Br. 8, n.6.)[7] Plaintiffs simply shrug and dismiss Defendants' cases as "inapposite criminal cases." (Resp. 17, n.5.) This counter is woeful given that much of the doctrine developing

---

[7] Citations to "Br." are to Brief in Support of Defendants' Motion to Dismiss [ECF 12].

the Fourth Amendment stems from criminal investigations. Moreover, Plaintiffs' counter is hollow—numerous of Plaintiffs' own cases are criminal decisions.

Finally, Plaintiffs also attempt but fail to distinguish Defendants' reliance upon *Duchow* and *Plock* finding there was no expectation of privacy as a matter of law in a classroom and/or school bus. (Br. 9-10.) Plaintiffs tamely argue that *Duchow* is distinguishable because one of the parties consented to the secret audio recording. (*Id.* 17.) However, even Plaintiffs note that the plaintiff in *Duchow* was a disabled child which vitiates the purported consent. *See Duchow*, 2008 WI 57, ¶33, n.22 (noting that the child was "mentally disabled" with "a significant speech impairment"). Furthermore, the only reference to consent in the case is where the Wisconsin Supreme Court expressly began its opinion by noting that its opinion does not address "vicarious consent by a parent." 2008 WI 57, ¶2, n.4. In other words, Plaintiffs cannot distinguish *Duchow* on this basis and Defendants' reliance upon it stands. (Br. 9-10.) Like *Duchow*, where the Wisconsin Supreme Court rejected arguments that it was "uncommon" for conversations to be audio recorded by a rider even though the subject statements were made alone and at a relatively low volume, Plaintiffs were never "vested with exclusive control of the [hallway]" and the "presence of a recording device [in a hallway] is a minor intrusion on a [citizen], because society retains a significant interest in ensuring the safety of those [visiting City Hall]." 2008 WI 57, ¶¶38-39; *see Plock*, 545 F.Supp. 2d at 758.[8]

---

[8] Plaintiffs criticize Defendants for "bizarrely" contending that there is no reasonable expectation of privacy in light of the circuit court's "conclusion that Plaintiffs' expectation of privacy was reasonable." (Resp. 2.) While the Defendants certainly opposed Plaintiffs' motion seeking relief based upon a "reasonable probability of success," *see Werner v. A.L. Grootemaat & Sons, Inc.* 80 Wis. 2d 513, 520-21, 259 N.W.2d 310 (1977), Plaintiffs overstate any "conclusion" reached by the circuit court, granting temporary, emergency injunctive relief the week after the original complaint was filed. *See* ECF 1-4 at 271:2-25 (referencing concern over the status quo and timing of suit in the midst of the Spring Election before concluding, "I don't know of another remedy on a temporary basis other than to direct that the audio equipment be turned off."). The circuit court's reasoning in issuing a temporary emergency order under

Having *failed to* plead sufficient facts to support a plausible, reasonable expectation of privacy that society would readily recognize, the Amended Complaint should be dismissed in its entirety. Indeed, if public hallways are a *de facto* place of privacy (as Plaintiffs have failed to plead specific facts to make their circumstances unique), there would be no just stopping point. In sum, Plaintiffs' claims fail and should be dismissed.

## II. Mayor Genrich is entitled to qualified immunity because there is no clearly established federal right to hold confidential conversations in a public hallway.

The question of qualified immunity may be decided on a motion to dismiss by examining the defendant's conduct "as alleged in the complaint … for objective legal reasonableness." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). The protections of qualified immunity are meant to provide an affirmative defense in response to a lawsuit as well as immunity from the burdens of litigation itself, such as complying with the duties presented by discovery requests and trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). For this reason, the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until th[e] threshold immunity question is resolved, discovery should not be allowed.")). The Supreme Court reasoned that "even such pretrial matters as discovery are to be avoided if possible, as '[i]nquiries of this kind can be peculiarly disruptive of effective government.'" *Mitchell*, 472 U.S. at 526 (*quoting Harlow*, 457 U.S. at 817).

As has been set forth, Plaintiffs' cases are inapposite: they have failed to offer authority that courts have "clearly established" a reasonable expectation of privacy in public, transitory settings such as hallways. In fact, Plaintiffs fail to distinguish *Duchow* and *Plock* finding there was

---

Wisconsin law is simply irrelevant and non-binding on this Court in evaluating Defendants' motion to dismiss (including Plaintiffs' newly pled federal claims).

no reasonable expectation of privacy in similar settings as a matter of law. Accordingly, it can hardly be true that the alleged recording of Senator Jacque's and Plaintiff Theisen's conversations in the hallways of City Hall violated "clearly established law." (Resp. 31.)

Throughout their Response, Plaintiffs stretch federal case law and dicta to weave a "clearly established right to hold confidential conversations in a public building," (*Id*. 21), out of all but whole cloth. These considerable efforts marshal against their argument: if such a clearly established right existed, Plaintiffs would not need to go to such great lengths to make their point.

A government official is entitled to qualified immunity for unconstitutional conduct so long as there could be a reasonable, albeit mistaken, belief about the legality of his or her conduct. *Saucier v. Katz*, 533 U.S. 194, 205-06 (2001); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("[I]f [officials] of reasonable competence could disagree on this issue, immunity should be recognized."). Plaintiffs principally rely on *Gennusa* and *Narducci*, as well *Arizona v. Gant,* 556 U.S. 332 (2009) and *United States v. Case*, 435 F.2d 766 (7th Cir. 1970) to argue that Mayor Genrich is not entitled to qualified immunity. However, Defendants have already distinguished the former two above in Section I(B), and *Gant* and *Case* fare no better.

*Gant*, a staple in criminal procedure textbooks, discusses the Fourth Amendment as it relates to searches incident to arrest. *See generally* 556 U.S. at 338. Nothing in *Gant* speaks to the use of audio monitoring equipment, and the privacy interest *Gant* weighs is, specifically, the limited privacy interest motorists have in *their* vehicles. *Id*. at 345. Plaintiffs' citation to the Supreme Court's opinion in *Gant* as authority for their contention that "whenever the government uses a warrantless audio recording device to monitor and record its citizens, its conduct is 'per se unreasonable'" is misleading to the point of being inappropriate. (Resp. 17.)

13

Plaintiffs cite to *Case* with similarly misplaced gusto—for the holding that "surreptitious listening to the conversations in a public store violated the Fourth Amendment." (Resp. 23; citing 435 F.2d at 768.) However, the ruling in *Case* was predicated on the fact that law enforcement listened to the conversations at issue (without a warrant) from a locked portion of a commercial building, where "the proprietors were the only ones with keys." 435 F.2d at 768. Moreover, the opinion does not clarify *where* within the store the conversation occurred—*i.e.*, whether it took place in a part of the store that was truly "public," as Plaintiffs assert.

Furthermore, Plaintiffs' statement that *Case* was "abrogated on other grounds" by *United States v. Concepcion*, 942 F.2d 1170 (7th Cir. 1991) is also incorrect. (Resp. 23.) In *Concepcion*, the Seventh Circuit affirmed that a defendant "could not assert an expectation of 'privacy' in the common area [of an apartment building]." 942 F.2d at 1172. In reaching its decision, the court observed that "five other tenants . . . used the space," and that "vestibule[s] and other common areas are used by postal carriers, custodians, and peddlers." *Id*. In other words, the common area in *Concepcion*, like the hallways at issue in the case at bar, cannot be enjoyed to the exclusion of others. Contrary to Plaintiffs' citation, *Concepcion* directly abrogated *Case*: "to the extent that . . . [*Case*] impl[ies] otherwise, it [has] not survived changes in the Supreme Court's definition of protected privacy interests." *Id*. Plaintiffs' citation to *Concepcion* is simply wrong.

To survive Defendants' qualified immunity defense as to Mayor Genrich, Plaintiffs must show that the Mayor violated a "clearly established statutory or constitutional right[.]" *Henry v. Hulett*, 969 F.3d 769, 785 (7th Cir. 2020) (internal citations and quotations omitted). Plaintiffs fail to meet their burden to "clearly establish" any such right and place it "beyond debate." *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017), citing *Mullenix v. Luna,* 577 U.S. 7, 12 (2015). Accordingly, Mayor Genrich is entitled to qualified immunity.

**III.**    **This Court is under no obligation to ignore the glaring standing deficiencies underlying Plaintiff Senate's presence in this dispute.**

The one-plaintiff principle is a floor, not a ceiling. While federal courts can dispense with a standing inquiry once it is established that at least one plaintiff has standing as to each claim, *see, e.g., Massachusetts v. E.P.A.*, 549 U.S. 497, 518 (2007), this Court should decline to do so here. In light of the settled standing principles that are violated by the Wisconsin State Senate's involvement in this case, and the limitless precedent that its involvement endorses, this Court should dismiss Plaintiff Senate from this action.

The Supreme Court has said "*[a]t least* one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (emphasis added). But this Court is certainly not restricted from assessing the standing of all litigants. *See* Aaron-Andrew P. Bruhl, *One Good Plaintiff Is Not Enough*, 67 DUKE L.J. 481, 489 (2017) ("Courts do not treat the one-plaintiff rule as mandatory. That is, I have not encountered any case outright forbidding an inquiry into other plaintiffs' standing upon finding one proper plaintiff"); *Thiebaut v. Colorado Springs Utilities*, 455 F. App'x 795, 802 (10th Cir. 2011) ("nothing in the cases addressing this principle suggests that a court *must* permit a plaintiff that *lacks* standing to remain in a case . . .. [C]ourts retain discretion to analyze the standing of all plaintiffs in a case and to dismiss those plaintiffs that lack standing"). Indeed, the Supreme Court has also opted to analyze the standing of each plaintiff, rather than stopping after establishing that one plaintiff has standing. *See, e.g., Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979).

Numerous other courts have similarly declined to treat the one-plaintiff rule as mandatory. *See, e.g., Thiebaut*, 455 F. App'x at 802; ("The general rule that only one plaintiff needs standing

to make an issue justiciable does not strictly prohibit a district court, in a multiple plaintiff case such as this, from considering the standing of the other plaintiffs even if it finds that one plaintiff has standing.") (internal citations and quotations omitted, quotation cleaned up); *Ctr. For Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 29 (D.D.C. 2020) ("Though the D.C. Circuit has stated that if one party has standing in an action, a court need not reach the issue of standing of other parties when it makes no difference to the merits of the case, that does not mean the Court must give all Plaintiffs an automatic pass.") (internal quotations omitted); *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008) ("Our determination of standing is both plaintiff- and provision-specific. That one plaintiff has standing to assert a particular claim does not mean that all of them do.") The Seventh Circuit has done the same. *See Access Living of Metro. Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 606 (7th Cir. 2020).

In *Access Living*, organizational and individual plaintiffs brought an action seeking injunctive and declaratory relief against Uber for violations of the Americans with Disabilities Act. *Id.* at 607. The Seventh Circuit separately analyzed each dismissed plaintiff's standing, despite the fact that plaintiffs with standing remained, in assessing whether the district court had abused its discretion in denying leave to amend the underlying complaint. *See id.* at 612-1. If the one-plaintiff rule were mandatory in this circuit, the Seventh Circuit's affirmance in *Access Living* would surely have been printed on fewer sheets of paper.

In the instant matter, Plaintiffs concede that the Wisconsin State Senate lacks proper Article III standing by failing to make any argument supporting its standing *at all*. (*See* Resp. 29-30.) Plaintiffs only suggest that this Court "need not expend judicial resources deciding whether the Senate has suffered a concrete injury or has authority under state law to speak on behalf of a purported institutional interest" because other Plaintiffs have standing as to each claim. (*Id.*;

internal citations and quotations omitted). "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]" *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

Plaintiff Senate does not have proper standing for the reasons cited in Defendants' opening brief. (Br. 16-21.) Plaintiffs' back-page footnote and the smattering of Wisconsin State Statutes it cites to, (*see* Resp. 30 n.7; citing Wis. Stat. §§ 13.365, 80.3.09(2,), 806.04(11)), do nothing to alter that outcome. The Wisconsin State Senate should be dismissed.

## IV. Plaintiffs' pure declaratory judgment actions (Counts I and VI) request an advisory opinion, fail to present live, justiciable controversies, and should be dismissed.

Plaintiffs either fail to appreciate, or strategically refuse to acknowledge, the breadth of what they are asking this Court to declare. Counts I and VI seek declarative rulings that any unposted audio surveillance in public hallways of a government building is necessarily illegal. To do so, this Court would have to find that the mere use of audio surveillance measures in these transitory, public, and unrestricted spaces violates a subjective expectation of privacy that is objectively reasonable. *See Katz*, 389 U.S. at 361 (outlining the applicable standard under the Fourth Amendment); *State v. Floyd*, 2017 WI 78, ¶19, 377 Wis. 2d 394, 898 N.W.2d 560 (Wisconsin's analogue is interpreted "coextensively with the … Fourth Amendment"); *Duchow*, 2008 WI 57, ¶19 (Wisconsin's Electronic Surveillance Control Act (WESCL), which regulates the interception of "oral communication[s]," Wis. Stat. § 968.31(1)(a), is "restricted to [oral statements] made in certain circumstances"—namely, those where speaker has a "reasonable expectation of privacy," which is "one society is willing to recognize as reasonable.").

Moreover, Plaintiffs ask this of the Court despite an intervening action by Green Bay's Common Council that has already rendered this controversy moot, *to wit*: Green Bay, Wisconsin Municipal Code, Ch.2., Art. IV., Div. 1, § 2-108; (ECF 1-2 at 14-15, ¶¶52-53.)

17

Plaintiffs claim that their requests for declaratory relief "are predicates to their damages claims." (Resp. 26.) This is not so. Put plainly, declaratory judgment ***is not*** a necessary predicate to Plaintiffs' claim for damages under the WESCL (Count II). Rather, in order for Senator Jacque and Plaintiff Thiesen to sustain their causes for damages under Count II, both have to show communications were "intercepted, disclosed or used" in violation of section 968.28, Wis. Stat. § 968.31(2m), which not only requires proof of a qualifying interception, disclosure, or use, but also a showing that Plaintiffs Jacque and Thiesen made qualifying "oral communications" and had a "reasonable expectation of privacy in the statements." *Duchow,* 2008 WI 57, ¶2.

Plaintiffs know the elements they must satisfy for Senator Jacque and Plaintiff Thiesen to be entitled to damages under the WESCL: they recited them ***under Count II*** of their Amended Complaint. (ECF 1-2 at 18-19, ¶¶68-70.) If anything, instead of a predicate, Count I is duplicative and unnecessary with respect to the damages sought under Count II.

With respect to Count VI, Plaintiffs misrepresent their own causes of action. Count VI is the only action rooted in the Wisconsin Constitution, specifically its Fourth Amendment analog. (*See generally* ECF 1-2, Causes of Action.) And Count VI exclusively seeks declaratory relief— not damages. (*Id.*, Count VI – Declaratory Judgment.) Plaintiffs' assertions that Count VI is a necessary predicate to any claim for damages falls flat.

As neither Count I nor Count VI relates to damages, Plaintiffs' reliance on *Crue v. Aiken*, 370 F.3d 668 (7th Cir. 2007) for the proposition that "'a declaratory judgment as a predicate to a damages award' is a type of declaration that an intervening event cannot moot" is entirely misplaced. (Resp. 26; citing 370 F.3d at 677-78.) In *Crue,* a group of faculty members and graduate teaching assistants asserted First Amendment challenges over an email from the chancellor banning university students, employees, "or others associated" from contacting student athletes

recruits. 370 F.3d at 674-75. Though the chancellor ultimately retracted the email, rendering any request for injunctive relief moot, the request for declaratory relief was still a "predicate" to the requested damages award for the purported First Amendment violation itself. *Id.* at 677.

Plaintiffs acknowledge that the Common Council removed the contested recording devices, (Resp. 35), and enacted an ordinance giving itself authority over audio recording technology in City Hall. (*Id.* 14.) Yet, Plaintiffs claim that Counts I and VI are not moot because their "claims are 'capable of repetition yet evading review.'" (*Id.* 34; citing *Gill v. Linnabary,* 63 F.4ᵗʰ 609, 613 (7th Cir. 2023).)

Plaintiffs do not explain how Defendants might resurrect the now-deactivated audio surveillance technology or install fresh devices. Plaintiffs even acknowledge the Common Council explicitly gave itself exclusive authority over audio recording technology in City Hall and voted to remove them. (Resp. 14, 35; ECF 1-2 at 13, ¶53.) Instead, Plaintiffs complain that the Mayor's "steadfast[] refus[al] to acknowledge the unlawfulness of his actions" suggests "that this constitutional violation could recur." (*Id.* at 28.) This argument would only be relevant if the intervening conduct was a voluntary cessation of the alleged violation, as was the case in *Freedom from Religion Found., Inc. v. Concord Cmty. Schs.*, 885 F.3d 1038, 1040 (7th Cir. 2018), cited by Plaintiffs.

In *Freedom from Religion Found, Inc.,* after a public school discontinued the use of religious themes in its annual holiday program, the Seventh Circuit affirmed that claims arising from the school's earlier use of such themes had not been mooted. 885 F.3d at 1050. The court observed that school officials "equivocate[d]" over whether the change should be adopted permanently. *Id.* at 1052. And, moreover, "at oral argument, the school hedged by saying that it would not 'rule out using the Church in the future.'" *Id.* at 1051. Importantly, the school had the

ability to repeat its conduct. *See id.* at 1052 ("It is easy to imagine the school bringing back the nativity scene"). Defendants have no such ability and *Concord Community Schools* is inapposite.

Plaintiffs' real gripe – or motivation – appears to be that the Mayor has not "acknowledged the wrongfulness of his actions," and has "clearly demonstrated that he is unrepentant." (Resp. 28.) Putting aside the silliness (and obvious politics) of Plaintiffs' purported ire that Mayor Genrich has not – in the midst of this litigation – "graciously . . . conceded that his conduct was inappropriate," (*id.*), federal courts should not decide moot claims solely because a party wishes its adversary had taken a different tone.[9]

Plaintiffs' posturing ignores the reality of the situation: they brought a lawsuit and requested emergency relief to obtain something that was achieved *permanently* through traditional, local governance a mere five days after the circuit court's temporary injunction was granted and just 14 days after Plaintiffs filed their initial complaint. (*See id.* 14, 35.)

Federal courts "do not adjudicate hypothetical or abstract disputes," they "do not possess a roving commission to publicly opine on every legal question," and they "do not issue advisory opinions." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021). Counts I and VI should be dismissed as neither presents a live, justiciable controversy. Plaintiffs' claims for declaratory judgment, at least, are moot.

## CONCLUSION

Plaintiffs' grievances have already been addressed through the political process and their Amended Complaint should be dismissed before any further government resources are drained into an otherwise resolved matter because each claim has been insufficiently pled. If the Amended

---

[9] Plaintiffs' demands for the Mayor's repentant *mea culpa* are particularly absurd not only in the midst of this pending litigation but also the criminal investigation they reference which Plaintiffs referred to the District Attorney themselves. (ECF 1-4 at 86.)

Complaint is not dismissed in its entirety, Counts I and VI are moot at this juncture and fail to present justiciable, live controversies. They, at least, must be dismissed. Even if this Court determines to permit all six of Plaintiffs' current claims to stand, it should dismiss Plaintiff Senate for lack of standing. Finally, Count IV should also be dismissed because Mayor Genrich is entitled to qualified immunity.

Dated: November 13, 2023.

STAFFORD ROSENBAUM LLP

*Electronically signed by Kyle W. Engelke*
Ted Waskowski, SBN 1003254
Kyle W. Engelke, SBN 1088993
Erin K. Deeley, SBN 1084027

*Attorneys for Defendants,*
*City of Green Bay and Eric Genrich*

222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701-1784
Email:  twaskowski@staffordlaw.com
        kengelke@staffordlaw.com
        edeeley@staffordlaw.com
608.256.0226